## Harp *v.* Glenolden Borough, Appellant.

*Road law—Change of grade—Turnpike road—Act of May 24, 1878, P. L. 129.*

Where a turnpike road company acquired the right by its charter to lay out a fifty-feet wide road upon and along an older highway sixty feet wide, and the company in the exercise of its power lays out and grades a road forty feet wide, leaving on each side of the graded portion ten feet of the old road at the natural grade, a property owner of a borough through which the road passes, is entitled to damages for injuries caused by the borough in cutting down the ungraded portion of the road to the grade of the turnpike. Such a case is within the Act of May 24, 1878, P. L. 129.

*Road law—Change of grade—Notice—Municipality—Boroughs—Turnpike companies.*

The municipalities of the commonwealth are by statute vested with authority to regulate or establish proper grades, of which those who deal with the highways are bound to take notice, but this power is not delegated to turnpike companies or corporations, to the record of which the public have not access. Property owners are not bound to take notice of the changes of grade which a turnpike company may propose to make at some time in the future, until such time as the company proceeds to carry its purpose into execution.

Argued Nov. 25, 1904.    Appeal, No. 203, Oct. T., 1904, by

defendant, from judgment of C. P. Delaware Co., March T., 1903, No. 214, on verdict for plaintiffs in case of Lewis L. Harp and Jennie, his wife, v. Glenolden Borough.     Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.     Affirmed.

Appeal from report of jury of view.     Before JOHNSON, P. J. The facts appear by the opinion of the Superior Court.

At the trial the defendant made the following offer:

Mr. Fronefield: I desire now to offer in evidence the plan produced and identified both by Samuel J. Cochran, who was on the stand yesterday, and by Mr. Harris, entitled "Plan and Profile of Darby and Chester Plank Road.     J. Lightfoot, Chief Engineer."

Mr. Alexander: The plan is objected to.

The Court: Sustained.     Bill sealed. [1]

Defendant presented these points:

1. Under all the evidence the verdict must be for the defendant.     *Answer:* That is refused. [2]

2. The damages, if any, accrued to the plaintiffs' property at the time the bed of the street was graded to its present grade and the evidence being that there has been no change of grade in the bed of the street within six years from the time the jury of view was appointed, the verdict must be for the defendant. *Answer:* That is refused. [3]

3. If the street was laid out and part of it graded to its present grade upwards of thirty years ago, the borough authorities have now the right to open it to its full width to the grade of the road as opened, without liability, inasmuch as the then owner of the property in collecting his damages, collected or had the right to collect all damages caused by grading the street its full width to the grade fixed at the time.     *Answer:* That is refused.     We have said to you if you shall find that this grading did take place, the change of grade, and it has damaged him, he is entitled to whatever will compensate him. [4]

4. The plaintiff took his property with the legal understanding that the borough could cut down his sidewalk to conform to the bed of the turnpike, without being liable to him in damages.     Now if the sidewalk was cut down to conform to the

bed of the turnpike, there can be no recovery. *Answer :* This is refused if there was a change of the grade by virtue of the ordinance under which the change was made. [5]

If the pavement was lowered to conform to the bed of the street, the grade of which was not changed, such lowering of the sidewalk is not a change of grade of the street and the plaintiff is therefore not entitled to recover. *Answer:* That is refused. [6]

9. I instruct you that if the street, where the pavement is laid, was lowered to conform to the bed of the turnpike, such a lowering of that part of the street is not a change in the grade or line of said turnpike or street, and is not an alteration or enlargement of the same. *Answer :* We say to that, what the rights of the parties would be had the pavement been lowered for the purpose of making it conform to the bed of the turnpike we don't say because there is no evidence that the grading of the pavement was done for any such purpose. If the grading of the sidewalk was a change of grade or an alteration and the plaintiff s property was damaged, he is entitled to recover to this extent, and the fact that the pavement, when the grading is done, is within the lines of the highway as originally laid out, will not prevent the plaintiff from being entitled to such damages as he has convinced you he has suffered. In other words, we instruct you that if this grading of this pavement injured and depreciated the value of the land of the defendant, then he is entitled to recover whatever that damage may be, providing you find that it was a change of grade or an alteration. And we might add to that, and that notwithstanding the pavement was within the lines of the road as originally laid out. [7]

5. The admitted facts being that the street was originally laid out sixty feet wide and forty feet of the bed thereof graded to its present grade, thirty years ago and upwards, and that the other twenty feet were in 1902 graded to conform to the bed of the street as graded, it follows that there was not such change of grade in 1902 as is contemplated by the act of assembly, and the verdict must be for the defendant. *Answer :* That is refused. [8]

Verdict and judgment for plaintiff, for $837.50. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exception; (2–8) above instructions, quoting them.

*W. Roger Fronefield,* for appellant.—The rule of law is that damages for the full grading of a street, accrue when the proper authorities do any work on the street toward cutting it to the established grade. The work is an entirety; the remedy attaches and the damages all accrue, when it is begun, even though stopped and not fully finished for years: Jones v. Bangor Borough, 144 Pa. 638; Cass v. Penna. Co., 159 Pa. 273; Steelton Borough v. Booser, 162 Pa. 630; Rodgers v. Philadelphia, 181 Pa. 243.

There is no difference in principle in the effect of partially grading, to an established grade fixed by a turnpike company, and to an established grade fixed by a borough. The turnpike company not only had the right, but was compelled by the Act of January 26, 1849, P. L. 10, sec. 11, to, and actually did, fix a grade for the pike; see Act of April 14, 1851, P. L. 617; Act of March 5, 1858, P. L. 70; Act of May 4, 1869, P. L. 1258; Cass v. Penna. Co., 159 Pa. 273; Morrison v. Conshohocken, 16 Montg. Co. Law Repr. 165; New Brighton Boro. v. Peirsol, 107 Pa. 280.

Ancient documents produced from the proper custody are admissible in evidence without proof: Shaller v. Brand, 6 Binney, 435; Lewis v. Lewis, 4 W. & S. 378; Cable v. Cable, 146 Pa. 451.

The present grading, by a borough, of the sides of an old road, laid out sixty feet wide and actually opened many years ago and graded in the center only forty feet wide, so that 'the sides now conform to the actual grade of the center, which is also the grade adopted by the borough, does not constitute a change of grade as contemplated by the Act of May 24, 1878, P. L. 129: New Brighton Borough v. United Presbyterian Church, 96 Pa. 331; O'Brien v. Philadelphia, 150 Pa. 589; McCurdy v. Linesville Borough, 25 Pa. C. C. Rep. 189; Brady Street, 99 Pa. 591.

*William C. Alexander,* for appellees.—It is the duty and within the power of the borough authorities to grade the entire street including that part of it occupied by sidewalks:

Phila. v. Weaver, 14 Pa. Superior Ct. 293 ; Steelton Boro. v. Booser, 162 Pa. 630.

And the damages inflicted by such work accrue at the time the actual change takes place on the ground: Jones v. Bangor Boro., 144 Pa. 638; Boro. of New Brighton v. Peirsol, 107 Pa. 280.

OPINION BY PORTER, J., January 17, 1905 :

This case was tried in the court below on an appeal by the borough from the report of a board of viewers, appointed upon the petition of the plaintiffs under the provisions of the Act of May 24, 1878, P. L. 129, to assess the damages caused by a change of the grade of a part of the highway upon which plaintiffs' land directly abutted. There was no dispute as to the conditions which had existed upon the ground for many years prior to the improvement of the highway undertaken by the borough, nor as to what the borough actually did, nor as to its authority in the premises. The highway had been laid out over fifty years ago at the natural grade, of the width of sixty feet, and was known as the " Great Southern Post Road ; " the Darby and Ridley Turnpike Company, by virtue of the provisions of the Act of April 14, 1851, P. L. 617, had acquired the right to locate a turnpike road fifty feet wide upon and along the said Great Southern post road, and all the rights of the turnpike company had subsequently become vested in the Chester and Darby Telford Road Company, which was incorporated on February 3, 1890, under the provisions of the Act of April 29, 1874, P. L. 73. The location of the right of way of the Chester and Darby Telford Road Company, fifty feet in width, through the borough of Glenolden, was in the center of the line of the Great Southern post road; the remainder of the Great Southern post road, being a strip five feet in width on each side, was a public highway and had become subject to the full control of the borough. The turnpike company had many years ago graded a road about forty feet wide along the middle of its right of way, thus leaving a strip five feet wide on each side within its right of way ungraded, so that between the property line on each side and the graded part of the turnpike there was a strip ten feet wide which remained at the natural grade. The borough entered into an agreement with the turnpike company,

fixing the lines of the right of way of that corporation, and having duly fixed the grade of the curb lines, in pursuance of on ordinance duly approved August 31, 1901, proceeded to cut down that part of the highway which had remained at the natural grade to a level practically the same as that of previously graded parts of the turnpike. The jury found that the change made by the borough damaged the property of the plaintiffs, and that question must be accepted as settled.

The only ground upon which the defendant contends that this judgment should be reversed is, that because the turnpike company had over thirty years ago graded a road of the width of forty feet, within the lines of its fifty feet right of way, the borough has now the right to reduce the entire highway to that grade, without liability for damages to property injured, for the reason that the injury to the property occurred at the time the original grading was done. The argument of the plaintiffs is that the turnpike company had the right to fix the grade of its road and that when it graded a road of the width of forty feet upon the line of its right of way, that was a legal establishment of the grade for the whole right of way, and must so remain for all time. The argument is not well founded, for the reason that the turnpike company was not bound to grade a road of the entire width of its right of way; when it graded a road of the width of forty feet it had done more then the law required of it. There was no evidence that this turnpike company had done or contemplated doing any additional grading since the adoption of the constitution of 1874, under the provisions of which owners of property became entitled to compensation for injury resulting from the construction or enlargement of the works of corporations invested with the privilege of taking private property for public use. There is, however, a further and final answer to the contention of the appellant; the turnpike company had no right in or authority over that part of highway which was without the lines of its own right of way, and no matter what grade the company may have established for its turnpike, it had no power to fix a grade for the five feet of highway immediately adjoining the property of the plaintiffs.

The rejection of the "Plan and Profile of Darby and Chester Plank Road," offered in evidence, worked no injury to the

appellant. There was no dispute as to the location of the highway, and the plaintiffs conceded the right of the borough to grade it; they were claiming damages for an injury resulting from a lawful exercise of corporate power. The appellant contends that the plan would have shown the grade which had been adopted by the turnpike company, but for such a purpose the plan would not have been competent evidence, unless accompanied by evidence showing that it had been adopted by the corporation. The municipalities of the commonwealth are by statute vested with authority to regulate or establish paper grades, of which those who deal with the highways are bound to take notice, but this power is not delegated to turnpike companies or corporations, to the records of which the public have not access. Property owners are not bound to take notice of the changes of grade which a turnpike company may propose to make at some time in the future, until such time as the company proceeds to carry its purpose into execution.

There can be no question that the work undertaken by the borough was a change of the grade of the highway; if the property of the plaintiffs was injured they were entitled to the compensation secured by the constitution, and the appropriate remedy was furnished by the act of 1878: In re Brady Street, 99 Pa. 591; Borough of New Brighton v. United Presbyterian Church, 96 Pa. 331; Jones v. Bangor Borough, 144 Pa. 638; New Brighton Boro. v. Peirsol, 107 Pa. 280; O'Brien v. Philadelphia, 150 Pa. 589; Rodgers v. Philadelphia, 181 Pa. 243.

The judgment is affirmed.