## McKaeig, Appellant, *v.* Philadelphia.

*Road law—Change of grade—Petition for viewers—Ordinance.*

1. Although a petition for the appointment of viewers to assess damages for change of grade under the Act of June 12, 1893, P. L. 459, may not be fatally defective because it fails to set forth the ordinance, or to aver in so many words that the damages are the proximate and immediate result of the change of grade, yet, if after viewers are appointed, the municipality files an answer setting forth the ordinance, and it appears that the averments of the petition are inconsistent with the ordinance, the court will quash the petition for the appointment of viewers.

2. In such a case the general rule that a motion to set aside or strike off the judgment must be based on an irregularity appearing on the face of the record, is not applicable; nor will the fact that the petitioner might have amended his petition, prevent the court from quashing the proceedings, if it appears as a fact that the petitioner never made any application to amend.

Argued Dec. 10, 1912. Appeal, No. 240, Oct. T., 1911, by plaintiff, from order of C. P. No. 3, Phila. Co., June T., 1910, No. 5,538, quashing petition for appointment of viewers in case of Margaret McKaeig v. Philadelphia. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Petition for appointment of viewers.
Motion to quash petition.
The facts stated in the opinion of the Superior Court.

*Errors assigned* was order quashing the petition.

*Trevor T. Matthews,* for appellant.—After the jury has been appointed for six months the city of Philadelphia cannot file an answer and the court quash the appointment of the jury upon this answer, when the record is entirely regular on its face: O'Hara v. Baum, 82 Pa. 416; Hall v. Publishing Co., 180 Pa. 561; Weidner v. Matthews, 11 Pa. 336; Womelsdorf v. Heifner, 104 Pa. 1; Chester v. Bullock, 187 Pa. 544.

The city alone has power to change the grade of a street; no other person or corporation has that power: Com. v. George, 148 Pa. 463.

There is ample authority for the proposition that the city can make itself liable by ratification of the change of grade: Shiloh Street, 165 Pa. 386.

*Edwin O. Lewis,* assistant city solicitor, with him *Michael J. Ryan,* city solicitor, for appellee.—The petition was insufficient in law and was properly quashed: Ogontz Avenue, 225 Pa. 126; Butler Street, 25 Pa. Superior Ct. 357; Eisenhart v. Phila., 154 Pa. 393; Fairmount Place, 12 Phila. 586.

The appointment of the jury was never a valid decree. Obtained under such circumstances, it was voidable upon motion at any time, and the court could have striken off the decree of its own motion at any stage of the proceedings.

OPINION BY RICE, P. J., May 15, 1913:

This is an appeal by Margaret McKaeig from the order of the court of common pleas quashing her petition for the appointment of viewers. As the power of the court to make that order is questioned, we deem it important to recite the proceedings in detail.

The petition, which was filed on September 2, 1910, was entitled, "In the matter of the change of grade of Conestoga Street from Race Street to Cherry," etc. It set forth the petitioner's ownership of a lot having a frontage of twenty-five feet on Race street, and apparently

not abutting on Conestoga street. It averred that by city ordinance approved November 8, 1906, page 253, the Department of Public Works was "authorized and directed" to grade to the established grade of the city, Conestoga street from Race street to Cherry street; that pursuant to the provisions of said ordinance the city had "by its officers, agents, servants and employees changed the grade" of Conestoga street; that as a result of the change of grade her property had been damaged and its market value depreciated; and that compensation for the damages sustained by her had not been paid by the city. The petition concluded with prayers, that the court appoint three discreet and disinterested viewers to assess the damages suffered by her and other interested property owners, "by reason of the change of grade of said street," and appoint a time when the viewers will meet for said purpose. Ten days later the court appointed viewers and fixed October 5, 1910, as the time of meeting for the performance of their duties. Whether the city received prior notice of the presentation of the petition, and the extent to which the viewers went in the performance of their duties, are matters upon which the record is silent. But it is fair to presume, in the absence of allegation to the contrary, that the viewers met at the time appointed by the court and gave previous notice by advertisement of the time and place of their meeting as directed in the order appointing them. It does not affirmatively appear, by depositions or otherwise, that the viewers had proceeded further in the performance of their duties, when on February 25, 1911, the city filed an answer, verified by the oath of the mayor, and moved to quash the petition. The answer alleged (1) that the petitioner's property does not abut on Conestoga street but on Race street, at a distance of twenty-two feet eleven inches west of Conestoga; (2) that the order approved November 8, 1906, page 253, is not as set forth in the petition, but its language is "that the Department of Public Works (Board of Surveyors) be authorized and directed to place on the City Plan

Conestoga street, from Arch street to Race street. . . .
Provided, that before said street shall be placed on the
plan the owners of property within the lines thereof shall
first dedicate the bed of the same to the city upon the
lines and grades as confirmed by the Board of Surveyors,
or shall indemnify the city from all damages or claims for
damages which may arise from placing said street on the
plan and its subsequent opening to the confirmed lines
and grades;" (3) that the allegation of the petition to the
effect that the city had by its officers, etc., changed the
grade is incorrect "as the city did no work or grading
of any kind upon said Conestoga street, as all such grading,
paving, etc., was done by private contract;" (4) that the
petitioner's property is in no way affected by placing
Conestoga street upon the city plan.

It is argued by counsel for the city that the petition
was fatally defective on its face, first, because it did not
set forth the ordinance at length, secondly, because it did
not set forth the character of the injury to the petitioner's
property, or aver that the damages sustained were the
proximate and immediate result of the change of grade
and were substantial. As to the first objection we remark,
that where the petitioner's allegation that his property
has been damaged by an improvement made by the city
pursuant to a city ordinance, good practice suggests that
the ordinance be set forth at length, and we entertain no
doubt that the court may require this to be done before
acting on the petition. We are speaking of a petition
under the Act of June 12, 1893, P. L. 459. But we are not
prepared to say that after the court has acted, the omission
to set forth the ordinance at length is a jurisdictional
defect which may be relied on at any stage of the proceed-
ings as ground for quashing the petition.

Nor, where the petitioner alleges that his property has
been damaged by the change of grade made by the city,
is it clear that it is absolutely essential to the jurisdiction
of the court to appoint viewers that it be averred in so
many words that the damages were the proximate and

immediate result and were substantial.   The case of Ogontz Avenue, 225 Pa. 126, upon which counsel relies, relates to what must be proved by a nonabutting property owner, in order to recover damages, not to the precise form of the petition.

But the fatal objection to this petition is that the ordinance referred to does not sustain the allegation that the street was graded by the city's officers and agents acting under an ordinance directing that that be done. If the city was liable in damages for the injury alleged to have done to the petitioner's property, it was on some other ground not disclosed in the petition. To state the proposition in another way: if the ordinance had been set forth in the petition, the court would have been warranted in dismissing the petition for the reason that it disclosed no ground for the appointment of viewers under the act of 1893.  It is no answer to say that the city might have been liable upon a ground not alleged, as for example its ratification of a change of grade made by other parties. The petition negatives that supposition by alleging that the change of grade was made by the city's officers and agents under an ordinance expressly authorizing and commanding them to make it, and, as we have seen, this allegation is negatived by the ordinance itself.   Under the circumstances the court was not bound to allow the assessment to be proceeded with, upon the bare possibility that though the petition would not sustain it, undisclosed facts might exist which would sustain it.

But it is argued that the general rule that a motion to set aside or strike off a judgment must be based on an irregularity appearing on the face of the record is applicable and prevented the action which the court took.   We cannot agree to this proposition.   The appointment of viewers was not such a judgment as prevented the court from looking at the ordinance expressly referred to in the petition, when brought to its view by the city's answer, for the purpose of ascertaining whether it authorized and directed the street to be graded as the petition alleged.

Nor can we agree to the proposition that the proceedings had gone so far as to preclude the city from bringing it to the court's view. It would have been futile to permit further expense to be incurred, unless some other ground for the assessment existed than that alleged.

It is further claimed that if the court believed the petition was defective, it should have allowed the petitioner to perfect it. Doubtless the court would have permitted it to have been amended if timely application had been made and the facts warranted such amendment. But although the petitioner had notice of the objection by the city's answer and motion to quash, and although a considerable length of time elapsed thereafter before the motion came on for disposition, the record fails to show that she made any application to amend. Therefore the court was warranted in disposing of the case upon the assumption that she was willing to stand on the record and did not desire to amend. Taking this view we are of opinion that the court was right in its conclusion that the variance between the petition and the ordinance was sufficient ground for quashing the petition.

The order is affirmed.